**THE TOSCANO LAW FIRM, LLC**
**80 Bloomfield Ave.**
**Suite 101**
**Caldwell, NJ  07006**
**Phone:  973-226-1691**
**Facsimile:  973-226-1693**
**E-Mail:  ptoscano@pptlawfirm.com**

Attorney for Plaintiff

### IN THE
### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MICHAEL ZIGARELLI, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | **COMPLAINT** |
| CITY OF CLIFTON and | : | |
| MARK CENTURIONE, | : | |
| | : | |
| Defendants. | : | |
| | : | |

### INTRODUCTION

1. This is an action for monetary damages brought pursuant to 42 U.S.C. 1983 and 1988, 38 USC 4311, the First Amendment to the United States Constitution and the common law of the State of New Jersey, against the City of Clifton and Mark Centurione, the Clifton, New Jersey Police Department (CPD) Chief of Police.

### JURISDICTION AND VENUE OF THIS UNITED STATES DISTRICT COURT

2. This Court has jurisdiction over the plaintiff's claims pursuant to 28 U.S.C. 1331, 1343 (3) and (4), 42 U.S.C. 1983 and 1988, 38 USC 4311 and the First Amendment to the United States Constitution dealing with Freedom of Speech.

3. Venue is proper in this District pursuant to 28 U.S.C. 1391(b)(2) because the events/omissions giving rise to these causes of action all occurred in the District of New Jersey.

## PARTIES

4. Plaintiff, Michael Zigarelli, at all relevant times mentioned herein, was/is a Police Officer with the City of Clifton, Passaic County, New Jersey Police Department (hereinafter referred to as "plaintiff"). He graduated from the Passaic County police Academy and was presented with the Academic Achievement Award because he had the highest grade point average in his Academy class. He is an outstanding law enforcement officer in his own right. His professional reputation among law enforcement is essentially impeccable. His work record is one of an assiduous, persevering, dedicated and decorated law enforcement officer, and is what every forthright and honest law enforcement officer strives to be. Simply put, he is the quintessential/prototypical law enforcement officer. But of paramount and critical importance to this litigation is that he is also a Master Sergeant with the United States Air Force Reserve, serving therein for over twenty (20) years, his first five (5) years on active duty. He has been stationed in South Dakota, South Korea and New Jersey. Additionally, he has been deployed to Kuwait, Saudi Arabia, the United Arab Emirates and Afghanistan, and has flown in and out of Iraq on short missions. He is also in charge of the Combat Arms Section of the 514th Security Forces Squadron. As of the time of the filing of the within Complaint, he is preparing for his fifth (5) deployment to Kuwait, where he will be stationed for approximately six (6) months.

5. Defendant, City of Clifton (hereinafter referred to as "City" or "Clifton"), is a municipal corporation of the State of New Jersey located in Passaic County. It is governed under the

2

mayor-council-administrator form of government, controlling the day-to-day operations of the CPD by way of hiring, teaching, training, retaining, educating, disciplining, paying, monitoring, checking and/or terminating its employees.

6. Defendant Mark Centurione, at all relevant times mentioned herein, served as one of the plaintiff's superior officers within the CPD. As will be more fully described herein, Centurione's prolonged, enduring and illegal actions toward the plaintiff were never, at any time, properly monitored or examined by defendant Clifton, and simply went unchecked. Clifton's obvious, outward, notorious and deliberate indifference to all which Centurione subjected the plaintiff to as recounted herein is inexcusable, intolerable and indefensible.

## RELEVANT FACTUAL AVERMENTS

7. The plaintiff's nightmare within the CPD began in/about the calendar year 2008, and continues, uninterrupted, to the present day.

8. In December, 2008, defendant Centurione, who was the plaintiff's Lieutenant at the time, curiously asked the plaintiff to sit down with him, one on one, with no witness present. Centurione shut the door to his office and stated, in words or substance, that they needed to talk about the plaintiff's military service. Perplexed, the plaintiff sat quietly and Centurione proceeded to ask him why he was serving in the military more than one (1) weekend a month and two (2) weeks a year. Centurione went on to state that the plaintiff's military service was affecting his CPD job performance, which was entirely false/fabricated and without a scintilla of factual support/fulcrum. In a strange/peculiar fashion, Centurione went on to state to the plaintiff that "the police department is your wife, and the military is your mistress", to which the plaintiff did not respond but could

3

not help inwardly thinking that there was something drastically/clinically wrong with Centurione.

9. But Centurione did not stop there, and went on to state during that same meeting "you gotta treat your wife better than your mistress because your wife is gonna be there for you in the long run". Still not finished, Centurione stated that it "was going to be very difficult" for the plaintiff "to become a detective" or "to move around in the department in the future" if the plaintiff "remained in the military". Now totally flabbergasted, and aware of his federal USERRA rights, the plaintiff remained tolerant, passive and stoic, yet knew that his career within the CPD from that day forward would be virtually impossible/exceedingly difficult to deal with if Centurione was one of his supervisors.

10. Thereafter, the plaintiff was told by numerous other CPD officers that Centurione "takes things personally" and had been known "to retaliate against other officers who go against him".

11. As a result of that unfathomable conversation and what Centurione advised him of during that sit-down, the plaintiff never sat for any promotional examination or applied for any other position within the CPD for fear that his doing so (or his upward movement within the CPD) would serve to enrage Centurione and exponentially augment his wrath toward the plaintiff even further.

12. The insanity continues. Somewhere during the calendar years 2009-2010, the plaintiff received orders regarding military service for some one hundred and ninety two (192) days. As soon as he advised Centurione of same, Centurione directly responded "denied", without any valid explanation or reasoning. Centurione went on to say to the plaintiff, "Zigarelli, I thought was talked about this"? Perhaps even more disturbing is that Centurione then said to the plaintiff, "don't take this military order, you've been warned".

Centurione then expressed to the plaintiff that he had talked to his Captain at the CPD, and that they "were going for termination" of him (the plaintiff). For months and months thereafter, the plaintiff was literally terrified beyond belief, fearing that he would lose his job, pension and home because of his unswerving loyalty to his country.

13. Subsequently, upon information and belief, Centurione related to the CPD Chief of Police at the time that the plaintiff "no longer wanted to be a police officer", a statement that was completely false and meant by Centurione to irreparably hurt/destroy the plaintiff's law enforcement career.

14. The insanity continues. Upon returning to the CPD after that service period, the plaintiff was on pins and needles waiting to be brought up on administrative termination charges as threatened months before by Centurione. The plaintiff was also the recipient of constant/relentless remarks by many for the next several years, as a direct result of Centurione's treatment toward him in open atmosphere at the CPD, such as "do you still work here", "hey, who's the new guy", "do your handcuffs still work" and "when's the last time you made an arrest". Again, all this as a direct result of Centurione's ongoing and unlawful wrath because of the plaintiff's love, loyalty, commitment, devotion, allegiance and service to the United States of America.

15. The insanity continues. In/about the calendar year 2014, and after once again returning from military orders, a CPD Sergeant asked the plaintiff to "stand up" in front of numerous patrolmen and "introduce" himself, simply to humiliate the plaintiff even further because of his legitimate absence from the CPD.

16. The harassment, humiliating and intolerable remarks directed toward the plaintiff were unremitting during the calendar years 2015-2018, and they included, but were not limited to, "hey, who's the new guy" and "please introduce yourself", inter alia.

17. But all of the above treatment for some eight (8) years was, to the plaintiff's chagrin, merely the tip of the iceberg. In November, 2018, things within the CPD (as well as the plaintiff's work atmosphere) became increasingly hostile, intimidating, frightening and far, far worse.

18. In November, 2018, the plaintiff received three (3) packages of paperwork from defendant Clifton, stating he owed Clifton some 2,632.37 hours (representing his military service time) and was required to produce all military pay stubs since the calendar year 2011. Bewildered, the plaintiff promptly advised his wife of this, who was some 38 weeks pregnant at the time. He was furthermore directed to comply within three (3) weeks, which was literally impossible to do, and Clifton should have or assuredly did know of that virtual impossibility. Clifton's usurious conduct was in clear violation of USERRA federal law, but Clifton did not care and thumbed its nose to said statute.

19. Additionally, the front page of the first letter the plaintiff received stated that he owed Clifton some 9,413.8 hours for his military service time, which equaled the sum of $658, 910.00. Both the plaintiff and his wife were blown away by this reprehensible and illegitimate request and, to add insult to injury, many of the hours that Clifton claimed the plaintiff owed back were when he was deployed and while Clifton was already reducing his CPD pay based on what his military pay scale revealed he was earning from the United States Government. Clifton's conduct at that time could only be described as shameful and reprehensible.

20. In January, 2019, an attorney representing some seventeen (17) CPD officers who were in a similar circumstance to the plaintiff sent a letter to defendant Clifton, essentially directing Clifton to cease and desist from their blatant discrimination and harassment.

When Clifton ignored this letter for two (2) months, NBC television got involved and a story was aired, which ostensibly got defendant Clifton aggravated even further.

21. Only after that news story aired, wherein Clifton's deplorable and illegal conduct was brought to light to thousands, did Clifton then publicly state (to merely save face) that it would "investigate" what was going on. Of course, this position then taken by Clifton was laughable, derisory, preposterous and absurd, as Clifton knew full well what it had done. Moreover, any "investigation" would certainly be bogus, misleading, illusory and pre-determined in conclusion, as defendant Clifton was the entity who would unilaterally hire and pay whoever they wanted, in order to clear them of any wrongful conduct on their part.

22. Subsequently, the plaintiff and other affected CPD officers attended a city council meeting in March, 2019. At that time, the plaintiff was permissibly and legally exercising his freedom of speech rights afforded him by the US Constitution, and was selling specially printed shirts in support of his (and other CPD officers) cause. A supportive city councilwoman thereafter communicated to the plaintiff that defendant Centurione directed the Clifton City manager to stop/prohibit the plaintiff from selling those shirts. That same City Manager also informed the CPD PBA president of Centurione's wrongful order to him.

23. This is precisely when, for the first time, the plaintiff was told that defendant Centurione also stated to numerous other CPD employees that "Zigarelli volunteers too much for the military and I gotta stop that", as well as "Zigarelli is a criminal". This defamation of the plaintiff by Centurione is inexcusable, slander, per se, indefensible and simply unpardonable.

7

24. Due to all of the above, the plaintiff will be forced to retire from military service as soon as legally allowable, for fear of losing his job with defendant Clifton and the CPD, thereby sorely losing myriad retirement points and pension emoluments.

25. Recently, the CPD has issued/taken the drastic step of a "vote of no confidence" in defendant Centurione as a result of his within described conduct. Despite same, defendant Clifton has taken no action to terminate Centurione, and continues to retain him in his current position.

## SPECIFIC CAUSES OF ACTION

### COUNT ONE

**(42 USC 1983 – 38 USC 4311 and FREEDOM OF SPEECH VIOLATIONS – AS TO ALL DEFENDANTS)**

26. Plaintiff repeats the allegations set forth in all preceding paragraphs.

27. In violation of 42 U.S.C. 1983, all defendants, while acting under color of law, violated the plaintiff's procedural and substantive rights pursuant to 38 USC 4311 and the First Amendment to the US Constitution, and further deprived the plaintiff of his right to enjoy this Constitutional protection.

### COUNT TWO

**(NEW JERSEY LAW AGAINST DISCRIMINATION- ARMED SERVICES- AS TO ALL DEFENDANTS)**

28. Plaintiff repeats the allegations set forth in all preceding paragraphs.

29. During all periods relevant to this cause of action, the plaintiff was an employee of Defendant City of Clifton within the meaning of N.J.S.A. 10:5-1, et seq.

30. Defendants are employers as defined by N.J.S.A. 10:5-5.

31. The plaintiff serves in the U.S. Air Force at the relevant times within the meaning N.J.S.A. 10-5-12, and was therefore in a protected class at the times he suffered disparate

and discriminatory adverse treatment and action, and failure to accommodate by the defendants.

32. The plaintiff was and is exceedingly well-qualified for the position of patrolman at all times relevant hereto.

33. Plaintiff was also well qualified to be permitted to resume duty as a patrolman with a reasonable accommodation, without being threatened, harassed or abused.

34. As set forth above, the plaintiff also suffered numerous adverse employment actions for years and was exposed to a hostile work environment on account of his protected status as a U.S. Air Force member..

35. Defendants Clifton and Centurione negligently, recklessly and/or intentionally:

    a.  failed to enforce an anti-discrimination policy;

    b.  failed to properly train and supervise its employees and supervisors regarding compliance with anti-discrimination policy promulgated by defendant;

    c.  failed to take proper and effective measures to ensure compliance with any anti-discrimination policy promulgated by defendant;

    d.  selectively, disparately and discriminatorily enforced and applied disciplinary and other employment policies; and

    e.  adopted, ratified, approved, acquiesced, were deliberately indifferent to and/or otherwise permitted the wrongful acts described above.

36. Defendants Clifton and Centurione knowingly and substantially aided and abetted in the commission of such conduct and wrongdoing and accordingly has individual and personal liability for same.

37. The Defendants do not have any legitimate, non-discriminatory reason or justification for the discriminatory conduct and adverse employment action taken against the plaintiff, and any reason Clifton and Centurione have advanced or may advance is mere pretext and not the true motivation for the action taken against the plaintiff.

9

38. As a direct and proximate result of defendants' actions, plaintiff Zigarelli has suffered and continues to suffer severe mental anguish, humiliation, pain, physical and emotional distress and reputational damages as well as loss of earnings and other employment benefits.

## COUNT THREE

### (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS – AS TO CENTURIONE)

39. Plaintiff repeats the allegations set forth in all preceding paragraphs.

40. As described above, Centurione acted intentionally and purposefully to cause the plaintiff emotional distress and injury, and/or acted in reckless disregard for a high degree of probability that emotional distress would follow from his awful conduct.

41. Centurione's continuous and relentless conduct was extreme and outrageous and was so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

42. As the direct and proximate cause of Centurione's extreme and outrageous intentional and/or reckless conduct, the plaintiff suffered genuine and substantial emotional distress and injury.

43. Centurione's conduct was so severe and extreme as to cause genuine and substantial emotional distress or mental harm to the average person similarly situated to the plaintiff, and plaintiff in point of fact suffered such severe and substantial emotional distress and mental injury that no reasonable person would be expected to endure.

## COUNT FOUR

### (42 U.S.C. § 1983 AS TO THE CITY OF CLIFTON)

44. Plaintiff repeats the allegations set forth in all preceding paragraphs.

45. Prior to the above mentioned dates, the City of Clifton developed, cemented, engrained and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of officers in the CPD, which eventually caused the egregious violations by Centurione and others of the plaintiff's rights.

46. Additionally, the Clifton failed to use reasonable care in the selection of Centurione as a CPD employee, failed to properly train and/or supervise him and failed to prevent the collective violations of the plaintiff's rights.

47. Further, Clifton, under color of state law, directly or indirectly approved or ratified the unlawful, malicious and wanton conduct of Centurione herein.

48. Moreover, Clifton failed to train the defendant Centurione regarding the rights of CPD officers who serve in the US Military Forces.

49. Unequivocally, Clifton knew or should have known that Centurione would have to make daily decisions regarding the legality/concept of military service of certain CPD officers.

50. Indeed, the lack of training of Centurione led to his directly violating the plaintiff's constitutional rights egregiously regarding/concerning his right to freedom of speech as well as his federal statutory USERRA rights.

51. Notwithstanding the above, Clifton's policy maker refused to properly train Centurione in this regard.

52. The lack of training and/or the inadequate training in these areas is surely tantamount to a custom and/or policy that encourages and, indeed as occurred herein, necessitates the violation of these human rights.

53. Clifton's blatant and deliberate indifference herein led to the inescapable fact that if it trained Centurione properly, then the within abhorrent and illegal actions would never have taken place.

11

## COUNT FIVE

## (DEFAMATORY INJURY TO REPUTATION- SLANDER – AS TO CENTURIONE)

54. Plaintiff repeats the allegations set forth in all preceding paragraphs.

55. By acting in the fashion as described above, and by accusing the plaintiff of being a "criminal", Centurione made an oral, false/defamatory statement of fact concerning the plaintiff on an exclusively private concern while either:

      a.  Acting negligently in failing to ascertain the truth or falsity of the statement before communicating the statement,

      b.  Knowing the statements were false, or

      c.  Acting in a reckless disregard of their truth or falsity.

## PRAYER FOR RELIEF

**WHEREFORE,** plaintiff prays that this honorable United States District Court:

(a)     accept  jurisdiction over this matter;

(b)     empanel a jury to hear and decide this matter;

(c)     award against defendants compensatory and punitive damages in a manner determined by a jury;

(d)     placing the CPD into Receivership for the purpose of instituting programs to train, instruct, discipline, control and supervise the officers of the CPD regarding the military service rights of certain CPD officers;

(e)     award to plaintiff the reasonable statutory attorneys' fees, interest and costs of this litigation; and

(f)     for such/any other relief that this Court deems equitable and just.

## DEMAND FOR TRIAL BY JURY

Pursuant to FRCP 38, the plaintiff herein demands a trial by jury on all counts.

Dated:  May 17, 2019          By:   _s/ Patrick P. Toscano, Jr._____
                                    Patrick P. Toscano, Jr. (9415)

12