**Not for Publication**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

MICHAEL ZIGARELLI,

    *Plaintiff*,

v.

CITY OF CLIFTON and MARK CENTURIONE,

    *Defendants*.

Civil Action No. 2:19-12632 (JMV) (JBC)

**OPINION**

**John Michael Vazquez, U.S.D.J.**

    Plaintiff alleges that Defendant City of Clifton against him because of his service in the armed forces. Presently before the Court is a motion to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendant City of Clifton ("City") (D.E. 15), which is joined by Defendant Mark Centurione (D.E. 18). Plaintiff filed a brief in opposition (D.E. 19), to which the City replied (D.E. 20).[1] The Court reviewed the parties' submissions and decided the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, the City's motion to dismiss is **GRANTED**. Two state-based claims remain, over which the Court does not have subject matter jurisdiction. The Court grants Plaintiff leave to file an amended complaint.

---

[1] Plaintiff's Complaint (D.E. 1) will be referred to as "Compl."; Defendant City of Clifton's brief in support of its motion to dismiss (D.E. 15-1) will be referred to as "Def. Br."; Plaintiff's opposition (D.E. 19) will be referred to as "Plf. Opp."; and Defendant's reply of its motion (D.E. 20) will be referred to as "Def. Reply."

**FACTUAL BACKGROUND**[2] **& PROCEDURAL HISTORY**

Plaintiff Michael Zigarelli is a police officer with the Clifton Police Department ("CPD"). Compl. ¶ 4, D.E. 1. He is also a Master Sergeant with the United States Air Force Reserve. *Id.* He has been deployed multiple times across the world, and at the time of the filing of the Complaint, was preparing for a six-month deployment in Kuwait. *Id.*

Zigarelli's concerns about his treatment by the CPD began in 2008. *Id.* ¶ 7. At the time, CPD lieutenant and defendant Mark Centurione requested that Zigarelli sit down with him for a one-on-one meeting. *Id.* ¶ 8. During the meeting, Centurione expressed concern that Zigarelli's military service was affecting his job performance. *Id.* ¶ 8. He also stated to Zigarelli that "the police department is your wife, and the military is your mistress" and that "you gotta treat your wife better than your mistress because your wife is gonna be there for you in the long run." *Id.* ¶¶ 8, 9. Centurione further warned that it "was going to be very difficult" for Zigarelli "to become a detective" or "to move around in the department in the future" if he "remained in the military." *Id.* ¶ 9. As a result of this conversation, Zigarelli declined to seek promotion within the CPD for fear that it would anger Centurione. *Id.* ¶ 11.

The following year, Zigarelli received orders that he would be engaging in military service for approximately 192 days. *Id.* ¶ 12. Upon being informed, Centurione responded that this would be "denied" and said to Zigarelli: "[D]on't take this military order, you've been warned." *Id.* He also told Zigarelli that he had talked to a captain at the CPD and they "were going for termination." *Id.* Centurione subsequently told the CPD Chief of Police that Zigarelli "no longer wanted to be a police officer." *Id.* ¶ 13.

---

[2] The factual background is taken from the Complaint. D.E. 1. When reviewing a motion to dismiss, a court accepts as true all well-pleaded facts in the Complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

Zigarelli did, however, engage in that service period, and upon returning faced various remarks from unidentified sources, such as "do you still work here?", "do your handcuffs still work?", and "when's the last time you made an arrest?" *Id.* ¶ 14. Similarly, in 2014, after once again returning from a period of military service, a CPD sergeant asked him to "stand up" and "introduce" himself to numerous patrol officers. *Id.* ¶ 15.

Then, in November of 2018, Zigarelli received paperwork from the City stating that he owed 2,632.37 hours of pay, a figure representing his military service time. *Id.* ¶ 18. The paperwork also required him to produce all of his military pay stubs since 2011 within three weeks. *Id.* Moreover, the front page of this paperwork stated that he owed the city some 9,413.8 hours of pay for his military service, equaling the sum of $658,910. *Id.* ¶ 19. Much of this requested pay reflected time during which his payment from CPD was already being reduced to reflect his military service. *Id.*

In January of 2019, an attorney representing 17 CPD officers in a similar situation to that of Zigarelli sent a letter to the City raising concerns about their treatment. *Id.* ¶ 20. The City explained that it would investigate the matter. *Id.* ¶ 21. In March of 2019, Zigarelli and other similarly situated officers attended a City council meeting. *Id.* ¶ 22. During this period, Zigarelli sold specially printed shirts in support of his efforts to combat the discrimination he and other officers were experiencing. *Id.* A City council member sympathetic to Zigarelli's cause mentioned to him that Centurione had directed the City manager to prohibit him from selling the shirts. *Id.* Zigarelli was also told that Centurione had told other CPD employees that "Zigarelli volunteers too much for the military and I gotta stop that," and that "Zigarelli is a criminal." *Id.* ¶ 23. As a result, the CPD has issued a "vote of no confidence" against Centurione. *Id.* ¶ 25. However, the City has taken no action to terminate him. *Id.*

Zigarelli filed this suit against both the City and Centurione, in his personal capacity, on May 17, 2019. D.E. 1. The Complaint asserts the following claims against both Defendants: (1) violation of 42 U.S.C. § 1983 for depriving Zigarelli of his rights under 38 U.S.C. § 4311 and the First Amendment of the Constitution, and (2) violation of the New Jersey Law Against Discrimination ("NJLAD"). *Id.* ¶¶ 26-38. Against Centurione only, the Complaint asserts claims of intentional infliction of emotional distress (*Id.* ¶¶ 39-43) and defamatory injury to reputation/slander (*Id.* ¶¶ 54-55). The Complaint also asserts an additional Section 1983 claim against the City only. *Id.* ¶¶ 44-53. The pending motion to dismiss followed.

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss when a complaint fails "to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the

facts alleged do not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

## II. ANALYSIS

In Count One, Plaintiff alleges a cause of action for violation of 42 U.S.C. § 1983. He states that "[i]n violation of 42 U.S.C. 1983, all defendants, while acting under the color of law, violated the plaintiff's procedural and substantive rights pursuant to 38 USC 4311 and the First Amendment to the US Constitution, and further deprived the plaintiff of his right to enjoy this Constitutional protection." Compl. ¶ 27. This appears to be an allegation that Defendants violated Section 1983 by violating Plaintiff's First Amendment right to free speech and his rights under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. § 4301 *et seq.*

Although he labels it a Section 1983 claim in his Complaint, Plaintiff argues in his opposition brief that his rights under USERRA were violated. If Plaintiff is actually asserting another Section 1983 cause of action, he must clearly assert such cause(s) of action in an amended complaint. The Court proceeds with a review of Plaintiff's claims.

### 1. USERRA Claim (Count One)

The City argues that Plaintiff's USERRA claim fails because he does not plead that he suffered an adverse employment action as a result of his military status. Def. Br. at 13-15. Plaintiff argues that his military status was a substantial and motivating reason for retaliatory and discriminatory behavior, which resulted in adverse employment decisions. Plf. Opp. at 11-16.

The USERRA prohibits employment discrimination on the basis of military service. 38 U.S.C. § 4311. Section 4311(a) provides that an individual "who is a member of, . . . or has an obligation to perform service in a uniformed service shall not be denied initial employment,

5

reemployment, retention in employment, promotion, or any benefit of employment by an employer on the basis of that membership, . . . or obligation." 38 U.S.C. § 4311(a). The act further provides that an employer

> shall be considered to have engaged in actions prohibited under subsection (a), if the person's membership, . . . or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, . . . or obligation for service.

38 U.S.C. § 4311(c)(1).

Courts apply the following "two-step burden shifting framework adapted from *NLRB v. Transportation Management Corp.*" when assessing a USERRA discrimination claim:

> [A]n employee making a USERRA claim of discrimination [ ] bear[s] the initial burden of showing by a preponderance of the evidence that the employee's military service was "a substantial or motivating factor" in the adverse employment action. If this requirement is met, the employer then has the opportunity to come forward with evidence to show, by a preponderance of the evidence, that the employer would have taken the adverse action anyway, for a valid reason.

*Carroll v. Del. River Port Auth.*, 843 F.3d 129, 131 (3d Cir. 2016) (quoting *Sheehan v. Dept. of Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001)). Military status is a motivating factor if the defendant "relied on, took into account, considered, or conditioned its decision on that consideration." *Murphy v. Radnor Township*, 542 F. App'x 173, 177 (3d Cir. 2013). Moreover, an adverse employment action under the USERRA is something that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Canete v. Barnabas Health Sys.*, 718 F. App'x 168, 169 (3d Cir. 2018) (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997)). The USERRA also prohibits employers from

taking adverse employment actions against an employee in retaliation for asserting his or her rights under the statute. 38 U.S.C. § 4311(b).

Plaintiff cites several incidents he considers to be adverse employment actions. For example, in 2009, Centurione responded "denied" to Zigarelli's request for leave to engage in military service and told him not to take the military order. Compl. ¶ 11. Centurione further stated to Zigarelli that they "were going for termination." *Id.* However, Zigarelli does not allege that he was in fact denied the ability to take the military order or that he was in fact terminated. To the contrary, the Complaint goes on to state that Zigarelli *did* take that period of leave for military service and then returned to employment. *Id.* ¶ 14. Following this, Centurione allegedly told the CPD Chief of Police that Zigarelli "no longer wanted to be a police officer." *Id.* ¶ 13. Nonetheless, Zigarelli did not suffer any actual employment consequences. Similarly, Zigarelli points to demeaning comments made by other officers as a result of this treatment, including pretending that he was new and forcing him to "introduce" himself despite having worked there for several years. *Id.* ¶¶ 14-15. None of these actions altered Zigarelli's compensation, terms, conditions or privileges of employment, or otherwise demonstrate that his position was adversely affected.

Ziagrelli also argues that the paperwork he received from the City demanding payment for previous military service constituted an adverse employment action. But he does not allege that he was ultimately required to pay this amount or that he did so. Zigarelli further points to the interactions that he had with the CPD and the City after other officers began protesting their treatment. But these allegations are limited to statements by a City councilwoman. Those statements — that Centurione had asked the City to prohibit Zigarelli from selling shirts and had been criticizing Zigarelli to City officials — still do not demonstrate that his employer took any adverse actions against him. *Id.* ¶¶ 22-23. Zigarelli's final claim, that he "will be forced to retire

from military service as soon as legally allowable, for fear of losing his job" is speculative and does not amount to an adverse employment action. *Id.* ¶ 24. Similarly, Zigarelli elsewhere claims that he declined to seek promotions because of Centurione's 2008 warnings to him. Plf. Opp. at 24. Ziagrelli has not pled that he was denied promotion or prevented from seeking promotion, only that he chose to avoid seeking promotion.

Zigarelli certainly alleges that he endured disturbing comments and conduct. However, without a more tangible impact on his employment status, this conduct is insufficient to state a claim for discrimination under the USERRA. Because he has not sufficiently alleged an adverse employment action, his USERRA claim is dismissed.

### 2. NJLAD (Count Two)

Ziagrelli also raises a claim under the NJLAD. In his opposition briefing, Ziagrelli explains that he is proceeding under a hostile work environment theory. Plf. Opp. at 24. The NJLAD prohibits unlawful employment practices and discrimination by an employer. *Tarr v. Ciasulli*, 181 N.J. 70, 83 (N.J. 2004). An employer "includes one or more individuals, partnerships, associations, organizations, labor organizations, corporations, legal representatives, trustees in bankruptcy, receivers, and fiduciaries." N.J.S.A. 10:5-5(a), (e). The definition of employer does not include an individual supervisor. *Tarr*, 181 N.J. at 83. Membership in the armed forces is a protected class under the NJLAD.

Under NJLAD, a plaintiff must prove the following for a membership-in-the-armed-forces-based hostile work environment claim:

> [T]he complained-of conduct (1) would not have occurred but for the employee's [membership in the armed forces]; and it was (2) severe or pervasive enough to make a (3) reasonable [member of the armed forces] believe that (4) the conditions of employment are altered and the working environment is hostile or abusive.

8

*Lehmann v. Toys R Us, Inc.*, 132 N.J. 587, 603-04 (1993).

NJLAD claims are analyzed under the analogous framework of federal Title VII claims. *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 842 (3d Cir. 2016) ("This Court's discrimination inquiry is the same for claims filed under Title VII and the NJLAD[.]") (citing *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 249 (3d Cir. 2006)). For hostile work environment claims, "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious)" are not sufficient. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation omitted). The standard is intended to be demanding enough "to ensure that Title VII [and, by extension, NJLAD], does not become a general civility code." *Id.* (quotation omitted).

The statute of limitations for claims arising under the NJLAD is two years. *Montells v. Haynes*, 133 N.J. 282, 292 (1993). When applicable, the continuing violation doctrine provides an exception to this limitations period, rendering conduct that occurred outside of the limitations period actionable. *Shepherd v. Hunterdon Developmental Center*, 174 N.J. 1, 18 (2002). "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment claim may be considered by a court for the purposes of determining liability." *Id.* at 20.

Plaintiff must therefore show one incident of severe or pervasive discriminatory conduct that occurred within two years of the filing of his claim. Vaguely stating that the conduct occurred within the period 2015-2018, Zigarelli points to being asked "hey, who's the new guy?" and "please introduce yourself." Compl. ¶ 16. This conduct does not rise above "simple teasing" or allow any reasonable inference of actionable hostility or abuse directed at Plaintiff. Since no discriminatory conduct that could give rise to a hostile work environment claim occurred within

the limitations period, Plaintiff cannot invoke the continuing violation theory. This claim is therefore dismissed.

### 3. Section 1983 Claims (Counts One and Four)[3]

Plaintiff brings two Section 1983 claims: one against both Defendants for deprivation of his First Amendment rights and one against the City for failure to train Centurione. Section 1983 is not a source of substantive rights, instead it provides a vehicle for vindicating the violation of other federal rights. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983. Thus, to establish a Section 1983 claim, a plaintiff must demonstrate that (1) there was a violation of a right under the Constitution and (2) the violation was caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

A municipality cannot be liable under Section 1983 for the acts of its employees on the basis of *respondeat superior*. *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014) (citing *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690-91 (1978)). Rather, to hold a municipality liable, a plaintiff must demonstrate that the violation of rights was caused by a municipal policy, practice, or custom. *Id.* To that end, a plaintiff must identify a policy or custom that "violates the Constitution or . . . while not unconstitutional itself, is the moving force behind

---

[3] As discussed above, Plaintiff also alleged a Section 1983 claim in Count One. This section discusses all potential Section 1983 claims.

the constitutional tort of one of its employees." *Id.* (quoting *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1027 (3d Cir. 1991)).

For his failure to train claim against the City, Plaintiff has not adequately explained which constitutional right has been infringed. He states that the City's employees infringed on his right "to serve in the military." Plf. Opp. at 18. But Plaintiff does not tie this to an enumerated constitutional right. Without sufficiently alleging a deprivation of a Constitutional right, Plaintiff's claim on this ground fails.

Later, Plaintiff refers to an allegation in the Complaint that Centurione infringed his freedom of speech. Plf. Opp. at 20. The only factual allegation in the Complaint that conceivably relates to freedom of speech is that a supportive City council member informed Plaintiff that "Centurione directed the Clifton City manager to stop/prohibit [him] from selling" shirts in support of his conflict with the CPD regarding back pay. Compl. ¶ 22. However, Plaintiff has not alleged that he was in fact prohibited from selling those shirts. Whether or not selling those shirts qualifies as protected speech, Zigarelli has not alleged that he was deprived of the ability to do so. Zigarelli fails to adequately allege a First Amendment violation.

Because Plaintiff has not adequately alleged that his constitutional rights were violated, he cannot succeed in either Section 1983 claim. This Court, therefore, need not reach whether the City could be liable for such a violation under a failure to train theory. Accordingly, the Section 1983 claims in Counts One and Four are dismissed.

### 4. Claims Against Centurione Only (Counts Three and Five)

In joining with the arguments advanced by the City, Defendant Centurione stated that the City's motion to dismiss, if successful, would result in the total dismissal of Plaintiff's Complaint. D.E. 18. However, the City only offered arguments as to liability under USERRA, NJLAD, and

Section 1983.  It did not offer any arguments as to Count Three (Intentional Infliction of Emotional Distress) or Count Five (Defamatory Injury to Reputation/Slander), both against Centurione.  These claims therefore remain viable.

However, because Counts Three and Five are state law claims, this Court does not have subject matter jurisdiction over them in the absence of federal claims or some other source of federal jurisdiction, such as diversity.  *See* 28 U.S.C. §§ 1331, 1332.  Diversity jurisdiction is not applicable based on the allegations in the Complaint.  When federal claims are dismissed at an early stage, and only state law claims remain, courts ought to decline to decide the state law claims. *See City of Pittsburgh Com'n on Human Relations v. Key Bank USA*, 163 F. App'x 163, 166 (3d Cir. 2006) (surveying circumstances under which a federal court should decline supplemental jurisdiction over exclusively state law claims).  Therefore, if Plaintiff declines to file an amended complaint reasserting his federal claims, this Court will dismiss the remaining claims for lack of jurisdiction.  Plaintiff is not precluded, however, from bringing the state claims in state court.

## V.     CONCLUSION

For the reasons stated above, Defendant City of Clifton's motion to dismiss (D.E. 15) is **GRANTED** and Counts One, Two, and Four are **DISMISSED**.  The dismissal is without prejudice and Plaintiff is granted leave to file an Amended Complaint that cures the deficiencies noted herein.  Plaintiff has thirty (30) days to file an Amended Complaint, if he so chooses, consistent with this Opinion.  If Plaintiff fails to file an Amended Complaint, the dismissal will be with

prejudice; the remaining state claims will be dismissed without prejudice, but this case will be closed.   An appropriate Order accompanies this Opinion.

Dated: April 11, 2020.

John Michael Vazquez, U.S.D.J.